# SILVERBERG
# GOLDMAN &
# BIKOFF, L.L.P.

Georgetown Place • Suite 120 • 1101 30TH Street, NW • Washington, D.C. 20007
Voice (202) 944-3300 • Facsimile (202) 944-3306
Writer's Direct Dial: (202) 944-3303 • Writer's E-Mail: jbikoff@sgbdc.com

ATTORNEYS AT LAW

Let this be filed ESH 9/30/03

September 29, 2003

**Via Facsimile**
(202)354-3232
The Honorable Ellen Segal Huvelle
Judge, United States District Court
For the District of Columbia
333 Constitution Avenue, N.W.
Washington, D.C. 20001

    Re: Federation Internationale de Football Association (FIFA) v. Nike, Inc.
        Civil Action No. 1:03CV2003

Dear Judge Huvelle:

    In response to the Court's request, attached is a copy of In Re Urbano, 1999 TTAB Lexis 203 (TTAB 1999), a decision of the United States Patent and Trademark Office's Trademark Trial and Appeal Board holding that the trademark "SYDNEY 2000" had secondary or acquired meaning, referring to the international institution of the Olympic Games, of which the International Olympic Committee is the head. Similarly, in this case, the trademark "USA 2003" refers to the international institution of the FIFA Women's World Cup games, of which FIFA is the head.

    Like the International Olympic Committee, FIFA, which comprises the soccer federations of 204 countries, maintains that its long-standing practice of registering and using host country and year marks in connection with soccer-related goods and services has established secondary meaning, and is therefore not descriptive. This averment is supported by the verified Complaint and the declarations of Thomas Houseman and David Gill, who was present in Court at the hearing today, and, we would proffer, was available to testify at great length to FIFA's long use and development of secondary meaning in its host country and year marks, including "USA 2003".

    FIFA is entitled to protect its mark against commercial entities, such as Nike, that use "USA 2003" or a contraction thereof, in connection with soccer-related goods and services. Nike uses "USA 03", a contraction that has the exact same meaning as "USA 2003" to promote soccer-related goods on its website and in retail stores, and did not begin to market its goods at retail until the FIFA Women's World Cup Games took place. This harms FIFA's ability to provide trademarks of value to its sponsors and commercial affiliates, and the simple expedient of requiring Nike to use the word "TEAM" in its trademarks would prevent this harm, while imposing little burden on Nike.

Sincerely,

James L. Bikoff

Encl.
cc: Pasquale Razzano, Esq. (Via facsimile)

Source: Legal > Federal Legal - U.S. > Administrative Agency Materials > Federal Agency Decisions, Combined
Terms: "ttab" & "urbano" (Edit Search)

✦Select for FOCUS™ or Delivery

*1999 TTAB LEXIS 203, ** 

In re Jose Ignacio Guisado **Urbano**

Serial No. 74/441,447

Trademark Trial and Appeal Board

1999 **TTAB** LEXIS 203

May 12, 1999, Decided

[*1]

Before Simms, Cissel and Walters, Administrative Trademark Judges.

**COUNSEL:**
Thomas J. Moore of Bacon & Thomas for applicant.

Edward Nelson, Trademark Examining Attorney, Law Office 107 (Thomas Lamone, Managing Attorney).

**CORE TERMS:** geographically, descriptive, registration, misdescriptive, deceptively, evidentiary, games, Trademark Act, excerpts, geographic, uniquely, general public, upcoming, presenting, originate, advertising, organizing, register, registered, connected, presumed, falsely, symbols, reply brief, trademark, advertisements, transmission, disclaimer, electronic, periodical

**OPINIONBY:** WALTERS

**OPINION:**
**THIS OPINION IS CITABLE AS PRECEDENT OF THE T.T.A.B.**

Opinion by Walters, Administrative Trademark Judge:

Jose Ignacio Guisado **Urbano** has filed a trademark application to register the mark SYDNEY 2000 for "advertising and business services, namely, the preparation of advertisements for others, the placement of advertisements for others, publicity services, and assistance in managing industrial or commercial companies," in International Class 35, and "communication services, namely, telephone communication services, electronic transmission of data and documents via computer terminals, delivery of messages by electronic transmission, electronic mail services, electronic storage of messages and data, facsimile transmission, pay-per-view television transmission services, telephone communication services, voice and data telecommunications services, and radio broadcasting services and telegraph communications services," in International Class 38. n1 The application [*2] includes a disclaimer of SYDNEY apart from the mark as a whole.

n1 Serial No. 74/441,447, in International Classes 35 and 38, filed September 29, 1993,



based on Spanish Registrations No. 1,753,659 (for the services in International Class 35) and No. 1,753,660 (for the services in International Class 38) under Section 44(e) of the Trademark Act and claiming priority, under Section 44(d) of the Act, based on the filing in Spain of the applications that matured into the noted registrations. The application as originally filed at the Patent and Trademark Office (PTO) also included goods in International Classes 16, 18 and 32, all of which were subsequently deleted.

The Trademark Examining Attorney has finally refused registration under the following sections of the statute:

(1) Section 2(a) of the Trademark Act, 15 U.S.C. 1052(a), on the ground that applicant's mark falsely suggests a connection with the Olympic games to be held in Sydney, Australia, in the year 2000;

(2) Section 2(e)(1) of the Trademark Act, 15 U.S.C. 1052(e)(1), on the ground that applicant's mark is merely descriptive in connection with [*3] its services because the mark "describes the fact that the services pertain to events that will be taking place in Sydney, Australia, during the summer Olympics in the year 2000" (final refusal, November 22, 1995); and

(3) Sections 2(e)(2) and 2(e)(3) of the Trademark Act, 15 U.S.C. 1052(e)(2) and 1052(e)(3), on the ground that applicant's mark is primarily geographically descriptive in connection with the identified services, or, alternatively, if the identified services do not originate in Sydney, on the ground that applicant's mark is primarily geographically deceptively misdescriptive in connection with the identified services. In this regard, the Examining Attorney contends that the primary significance of SYDNEY is geographic; that 2000 is highly descriptive because "it denotes the year that the Olympic games will take place in Sydney" (final refusal, November 22, 1995); that the addition of highly descriptive matter to a primarily geographic term does not avoid the geographic significance of that term; and that, therefore, the mark SYDNEY 2000 is either primarily geographically descriptive if applicant's services come from Sydney, Australia, [*4] or the mark is primarily geographically deceptively misdescriptive if applicant's services do not originate in Sydney, Australia.

Applicant has appealed. Both applicant and the Examining Attorney have filed briefs, but an oral hearing was not held. n2

n2 Applicant initially requested an oral hearing, but subsequently withdrew that request.

We consider, first, the refusal under Section 2(a) of the Act. Section 2(a) of the Act requires that registration be refused if the mark sought to be registered "consists of or comprises matter which ... may falsely suggest a connection with persons, living or dead, institutions, beliefs, or national symbols, or bring them into contempt, or disrepute." As the Court explained in *University of Notre Dame du Lac v. J.C. Gourmet Food Imports, Inc., 703 F.2d 1373, 217 USPQ 505 (Fed. Cir. 1983),*

> A reading of the legislative history with respect to what became Section 2(a) shows that the drafters were concerned with protecting the name of an individual or institution which was not a technical "trademark" or "trade name" upon which an objection could be made under Section 2(d) ... Although not articulated [*5] as such, it appears that the drafters sought by Section 2(a) to embrace the concepts of the right to privacy, an area of the law then in an embryonic state ...

The Examining Attorney, who has the burden of establishing the elements of the refusal to register under Section 2(a), must establish that the mark in question, or the relevant portion, points uniquely to persons, living or dead, institutions, beliefs, or national symbols. *University of Notre Dame du Lac v. J.C. Gourmet Food Imports, Inc.*, supra at 509. Further, the Examining Attorney must establish that such person or institution: (1) is not connected with the goods or services performed by applicant under the mark, and (2) is sufficiently famous that a connection with such person or institution would be presumed when applicant's mark is used in connection with its goods or services. See, *In re Sloppy Joe's International Inc.*, 43 USPQ2d 1350 (TTAB 1997); *In re North American Free Trade Association*, 43 USPQ2d 1282 (TTAB 1997); *In re Nuclear Research Corp.*, 16 USPQ2d 1316 (TTAB 1990); *In re Cotter & Co.*, 228 USPQ 202, 204 (TTAB 1985); [*6] and *Buffett v. Chi-Chi's Inc.*, 226 USPQ 428 (TTAB 1985).

We turn, first, to the requirement that the Office establish that SYDNEY 2000 points uniquely to an institution and that it would be recognized as such. The Examining Attorney has submitted excerpts of news articles from the LEXIS/NEXIS database n3 concerning the fact, acknowledged by applicant, that the Olympic Games will take place in Sydney, Australia, in the year 2000. The excerpts from U.S. non-newswire sources do not reflect use of the exact phrase SYDNEY 2000 to refer to the upcoming Olympic Games, but they include numerous uses of the following phrases: "the Games ... in Sydney, Australia (2000)"; "Australia's 2000 Olympic Games"; "the 2000 Olympics in Sydney, Australia"; and "Summer Olympics in Sydney in 2000."

n3 We note that a few of the excerpts made of record are duplicative, are from non-U.S. publications, or are newswire stories. Those excerpts from non-U.S. sources are of minimal evidentiary value as they do not necessarily show the use of the term as it would be viewed by U.S. consumers. Similarly, newswire stories are of minimal evidentiary value because it is not clear that such stories have appeared in any publication available to the consuming public. See, *In re Marico Inc.*, 24 USPQ2d 1938 (TTAB 1992); and *In re Men's International Professional Tennis Council*, 1 USPQ2d 1917 (TTAB 1986). [*7]

Additionally, the Examining Attorney submitted copies of registrations, issued to The Atlanta Committee for the Olympic Games, for marks including the phrase ATLANTA 1996 alone and with various designs, for a wide variety of goods. n4

n4 While the Examining Attorney submitted this evidence with his brief, we have considered this evidence as of record as applicant did not object and considered this evidence on its merits in its reply brief.

The application also includes evidence submitted in connection with a Letter of Protest. n5 This evidence includes excerpts from periodicals that appear to be Australian in origin. While these periodicals use the phrase "Sydney 2000" in reference to the upcoming Olympic Games, this evidence is of minimal evidentiary value herein, as we have no indication of the extent to which the general public in the United States may have been exposed to these articles and, thus, to the phrase "Sydney 2000." The Letter of Protest evidence also includes a cover page identified as a report to the IOC (presumably, the International Olympic Committee), excerpts from what appears to be an IOC periodical, and brochures and advertising copy which appear to be from [*8] the respective organizing committees for the Olympic Games in Nagano, Atlanta, and Lillehammer. These documents refer to the respective Olympic Games by their location, followed by the year, e.g., "Nagano 1998,"

"Atlanta 1996," "Lillehammer '94." However, the record includes no affidavits or other evidence establishing any foundation for these documents and, thus, they are of minimal evidentiary value. In particular, we have no information establishing either the authenticity or the exact nature or source of the documents. n6 While this Letter of Protest material shows the phrase "Sydney 2000" as a reference to the upcoming Olympic Games, for the reasons stated, we find this material of extremely limited evidentiary value.

n5 The record includes a memorandum, dated September 27, 1998, from the Administrator for Trademark Classification and Practice, granting the third-party Letter of Protest, directing the Examining Attorney to issue a refusal to register based on the objection in the Letter of Protest, and forwarding the evidence submitted therewith to the application file. The application record does not include the identity of the party submitting the Letter of Protest. As applicant notes in its reply brief, we are not bound in any way by these statements of the Administrator for Trademark Classification and Practice. The objection by the third party is stated as follows:

> The phrase SYDNEY 2000 is commonly used to refer to the Olympics that will take place in the year 2000 in Sydney, Australia. It is noted that the Examining Attorney has refused registration of this mark to this applicant, however, the evidence offered in this Letter of Protest may assist the Examining Attorney in maintaining that refusal.

n6 While we note that, as a matter of practice, the evidentiary requirements in an *ex parte* record are less formal than in an *inter partes* context, we agree with applicant that a third party cannot submit documents in an *ex parte* record in a manner that would be unacceptable in an *inter partes* context, i.e., in this case, without any foundation. The author of the Letter of Protest should have submitted an affidavit of an appropriate witness to identify and authenticate the documents that are not clearly identified as to nature or source and are not self-authenticating. [*9]

Having said this, we find sufficient evidence properly in the record clearly indicating that there has been widespread publicity for the Olympic Games so that we can conclude that the Olympic Games are well known to the general public; and that the general public is likely to be well aware that the 2000 Olympic Games will be taking place in Sydney, Australia. Thus, while the general public in the United States may or may not have seen the upcoming Olympic Games referred to precisely as "Sydney 2000," we have no doubt that the general public in the United States would recognize this phrase as referring unambiguously to the upcoming Olympic Games in Sydney, Australia, in the year 2000.

While we do not consider the Olympic Games, *per se*, to be an "institution," it is only common sense that an event of such magnitude, which occurs on a regular and ongoing basis, requires a substantial organizational structure to support and organize it. In this regard, we refer to Section 103(4) of the Amateur Sports Act of 1978, 36 U.S.C. 373(4), which defines "Corporation" as the "United States Olympic Committee," and Section 110 of the Amateur Sports Act of 1978, [*10] 36 U.S.C. 380, which provides to the Corporation exclusive rights in specified Olympic symbols and terms. n7 Additionally, we note the registrations of record issued to "The Atlanta Committee for the Olympic Games." n8 It appears from this record that there are various international and national organizations pertaining to the Olympic Games, although we assume, in the absence of evidence to the contrary, that there is some relationship among them for the purpose of presenting the Olympic Games. Thus, we believe that the entire organization which comprises the Olympic

therein "was designed to have an expansive scope." [*11]

Next, we look at whether the Office has met its burden with respect to the requirement that the institution identified by the mark is not connected with the services to be performed by applicant under the mark, and we find that it has. Applicant does not contend that it is a part of, or an authorized sponsor or licensee of, the official Olympic Games.

Finally, we look at whether a connection with the Olympic Games would be presumed when applicant's mark, SYDNEY 2000, is used with its identified advertising and business services and/or its communications services. Applicant's identified services, in particular, those advertising services involving "placing advertisements for others" and "publicity services," and the identified communications services, are services that can be reasonably assumed to be offered as part of the massive infrastructure necessarily comprising the Olympic Games in Sydney in 2000. It is reasonable to expect such services to be offered to and by those organizing and presenting the Games, as well as to and by participants, sponsors, licensees, and attendees of the Games.

Accordingly, we find that the Patent and Trademark Office has met its burden of proving that [*12] applicant's proposed mark SYDNEY 2000 falsely suggests a connection with the Olympic Games, and we affirm the refusal on this ground.

While we have affirmed the refusal to register under Section 2(a), in order to render an opinion on all issues, we also consider the additional grounds of refusal. We begin by noting the relevant factual finding we have made in connection with the Section 2(a) refusal herein, that a connection with the institution of the Olympic Games would be presumed when applicant's mark SYDNEY 2000 is used in connection with its proposed services.

Considering, first, the Section 2(e)(1) refusal on the ground of mere descriptiveness, the test for determining whether a mark is merely descriptive is whether the involved term immediately conveys information concerning a quality, characteristic, function, ingredient, attribute or feature of the product or service in connection with which it is used, or intended to be used. *In re Bright-Crest, Ltd.*, 204 USPQ 591 (**TTAB** 1979); *In re Engineering Systems Corp.*, 2 USPQ2d 1075 (**TTAB** 1986). Because we have found that the primary significance of the phrase SYDNEY 2000 [*13] is as a reference to the Olympic Games, to which the phrase points uniquely, we find that, when considered in connection with applicant's services, SYDNEY 2000 is not merely descriptive, and the Examining Attorney's refusal on this ground is reversed.

Turning next to the Sections 2(e)(2) and 2(e)(3) refusals, the test for determining, under

Games, as a whole, qualifies as an "institution" within the meaning of Section 2(a) of the Trademark Act. n9 It is unnecessary for us to determine the specific responsibilities of the various Olympics organizations relative to each other or to the Games in Sydney.

n7 This statute pertains to words and designs that are not part of the mark in this case. We note this statute only because it indicates at least one of the organizations responsible for organizing and presenting the Olympic Games.

n8 We are not persuaded by applicant's arguments in its reply brief regarding the registrations in the record issued to The Atlanta Committee for the Olympic Games. In particular, the fact that the "institution" organizing and presenting the Olympic Games may own trademarks in connection therewith does not negate the Section 2(a) refusal herein.

n9 See, *In re North American Free Trade Association*, supra at 1285, wherein the Board notes that the legislative history of Section 2(a) indicates that the reference to "institution" therein "was designed to have an expansive scope." [*11]

Section 2(e)(2), that a mark is primarily geographically descriptive, is whether (i) the mark sought to be registered is the name of a place and this place is known generally to the public, and (ii) the public would make a goods/place association, that is, believe that the goods or services for which the mark is sought to be registered originate in that place. See, e.g., University Book Store v. University of Wisconsin Board of Regents, 33 USPQ2d 1385, 1402 (TTAB 1994); and In re California Pizza Kitchen, Inc., 10 USPQ2d 1704 (TTAB 1988), citing In re Societa Generale des Eaux Minerals de Vittel S.A., 824 F.2d 957, 3 USPQ2d 1450 (Fed. Cir. 1987). The same test applies to determining the alternative question of whether a mark is primarily [*14] geographically deceptively misdescriptive, under Section 2(e)(3), with the additional requirement that purchasers mistakenly believe that the goods or services originate in, or are connected with, the geographic place named. n10

n10 The amendments to Section 2 of the Trademark Act of 1946 made by Public Law 103-183, 107 Stat. 2057, The North American Free Trade Enactment Act, apply to applications filed on or after December 8, 1993. While this application was filed before the effective date of the amendments, we note that prior to these amendments, the prohibitions against registration on the grounds that a mark is primarily geographically descriptive or that a mark is primarily geographically deceptively misdescriptive were contained in Section 2(e)(2) of the Act. Under the law as amended, the prohibition against registration on the ground that a mark is primarily geographically deceptively misdescriptive is contained in Section 2(e)(3) of the Act. The legal standard for determining this issue remains the same, although marks found to be primarily geographically deceptively misdescriptive under the amended provisions are not eligible for registration under the provisions of Section 2(f) of the Act, subject to certain grandfather provisions which do not appear to be applicable in this case. Similarly, while a disclaimer of a primarily geographically descriptive element of a mark remains permissible under the amended provisions, disclaimer will not overcome a refusal under Section 2(e)(3) on the ground that the subject term is primarily geographically deceptively misdescriptive. See, In re Hiromichi Wada, 48 USPQ2d 1689, 1691 (TTAB 1998). [*15]

Because we have found that the primary significance of the phrase SYDNEY 2000 is as a reference to the Olympic Games, to which the phrase points uniquely, we find that the Examining Attorney has not established the first prong of the test, namely, that the mark is the name of a place. n11 Therefore it is unnecessary to consider the second prong of the test as it applies to the refusal under either Section 2(e)(2) or Section 2(e)(3). Because the Examining Attorney has not met the first prong of the test for determining either that, in connection with the identified services, the mark is primarily geographically descriptive or, alternatively, primarily geographically deceptively misdescriptive, the refusals under Section 2(e)(2) and, alternatively, under Section 2(e)(3), are reversed.

n11 The Examining Attorney has established the primary geographic significance of SYDNEY. Applicant's arguments to the contrary are disingenuous. However, as we have already found, the mark SYDNEY 2000, in its entirety, points uniquely to the institution of the Olympic Games. Thus, SYDNEY 2000 is not the name of a place in the context of Sections 2(e)(2) and (3) of the Act.

R. L. Simms

R. F. Cissel [*16]

C. E. Walters

Administrative Trademark Judges,

Trademark Trial and Appeal Board

*Decision:* The refusal to register is affirmed under Section 2(a) of the Act. However, the refusals to register are reversed as to Section 2(e)(1) of the Act, and as to the alternative grounds of Sections 2(e)(2) and 2(e)(3) of the Act.

Source: Legal > Federal Legal - U.S. > Administrative Agency Materials > Federal Agency Decisions, Combined
Terms: "ttab" & "urbano" (Edit Search)
View: Full
Date/Time: Monday, September 29, 2003 - 4:54 PM EDT

About LexisNexis | Terms and Conditions

Copyright © 2003 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.